The opinion of the court was delivered by
Cabpestjír, J.
The first objection urged by the counsel for *406 tjie plaintiff in error, and which applies to both the first and second counts of this indictment, is for uncertainty, in the description of the instrument alleged to have been forged. The act under which these two counts are drawn, Elm. Dig. 109, sec. 42, says, if any one shall falsely forge &c., any “ bank bill or note.” It is alleged, that these terms indicate different instruments, in the position which they occupy in the statute; and that the indictment is therefore defective in'describing the instrument forged, as both a “ bank bill and note.” The instrument, unquestionably,' must be correctly described in the indictment; as in a case cited, if a bill of exchange be described as a promissory note, the defendant will be acquitted. Rex v. Hunter, Russ, and Ryan, 511. Archb. Cr. L. 288. But it is apprehended that the words bank bill or note, in the statute, do not refer to different, but to one and the same instrument; and that the description “ bank bill and note”'is sufficiently certain; referring to the instrument forged, which is set out verbatim, and which appears to be both a bank bill and note; a bank note being, in ordinary parlance, known indifferently by the name of bank, bill or bank note. A case in a late English report is in point. An English statute enacts, “ that if any person shall forge, &c., any warrant or order for the payment of money, with intent, &c.” An indictment under this statute, which charged a forged check to be “ a warrant and order for the payment of money, which said warrant and order is in the words and figures following,” was held good, on the ground that there was but one instrument set forth in the indictment, which upon its face was both “ a warrant and an order.” Rex v. Crowther, 5 Carr. and Payne, 316. 24 Eng. Com. Law Rep. 337.
Another objection, taken by the counsel to this indictment, applies to the third and last count; and is of the same character: namely that of alleged uncertainty in the description of the instrument set forth. The statute, Elm. Dig. 115, § 72, says,_ “ if any person shall have in his possession any forged or counterfeited promissory note for the payment of money, with intention,” &c. The instrument, set forth in this count, is described as “ a certain forged and counterfeited promissory note for the payment of money, commonly called a bank note;” and it is *407 alleged, that the additional description, “commonly called a bank note,” not being found in the statute, renders the count uncertain. The counsel in support of this objection, has referred us to cases, whore in indictments under the statute, 2 Geo. 2 c. 25, making the stealing of bank notes felony, the same were not sufficiently described as promissory notes, commonly called bank notes. Archb. Cr. L. 204, Rex v. Craven, Russ & Ryan 14. 2 East’s P. C. 601, 602. In the ease of Rex v. Graven, the indictment was holden bad because it did not follow the description of the property in the statute. But this is not the case in the count under consideration. The instrument, in the words of the statute, is stated to be “ a counterfeited promissory note for the payment of money,” additional description being thereto added, that it is “ commonly called a bank note.” These words are mere surplusage and may be rejected; or at any rate they are words of mere additional description, perhaps unnecessary, but if so, still entirely consistent with the previous words found in the statute, and therefore not vitiating or rendering the same uncertain or defective. A bank note is a promissory note. Brown v. Commonwealth, 8 Mass. 64. Commonwealth v. Cary, 2 Pickering 50.
Another objection, taken to this indictment, is that of misjoinder. Indictments for misdemeanors may contain several counts for different offences, provided the judgment upon each be the same but not otherwise. Arch. Cr. L. 62, and cases cited. That is, as the rule is to be understood, necessarily different, the judgment being of a different character. In this case, under the 42d section, the offender being convicted shall be deemed guilty of a high misdemeanor, and punished by fine and imprisonment or both ; the word and being evidently a misprint or other mistake. The punishment, to which an offender convicted under the 72d section of the offence charged in the third count, may be subjected, is fine or imprisonment or both, — and in each case not to exceed a certain time, and amount, at the discretion of the court. The offence charged in each count of this indictment is a misdemeanor, and the punishment in each case the same; that is to say of the same character, fine and imprisonment — and does not come within the rule with regard to different judgments. It is no objection to an indictment that the punishment for one of the *408 offences is positive and for the,others discretionary. 1 Chit. Cr. Law 255, and cases cited. The People v. Rynders, 12 Wendell, 425. Kane v. The People, 9 Ib. 203.
A further objection urged, relates to the allegation of intent to defraud, set forth in the second and third counts. When the intention of the party, in the commission of any offence, is an ingredient of such offence, in such case it must necessarily be charged in the indictment, and be proved as in the case of the statutes relating to forgery; though in regard to proof, the jury will infer an intent to defraud the person who would have to pay the instrument if it were genuine. The law presumes that he intends that which is the natural consequence of his acts. Archb. Cr. L. 288, 293. Rex v. Mazagora, Russ. and Ryan, 291. Roscoe Cr. Ev. 457. The intent to defraud is an ingredient in the offences provided for in both the 42d and 72d sections of the act respecting crimes, and must consequently be charged in the indictment in accordance with the statute. The intent set forth in the two last counts under consideration is charged to be, “ to defraud the people of the State of New Jersey.” This mode has been doubtless adopted to meet an anticipated difficulty of proving the intent to defraud any particular person, but a difficulty, which perhaps would be more successfully or surely met, by charging the intent to be to defraud “ some person to the jurors unknown.” The words of the 42d section of the statute are, “ with intent to prejudice, injure, damage or defraud any person or persons, body politic or corporate ; ” and the words of the 72d section are not materially variant from those of the section first named. It is at least doubtful if this is a sufficient allegation of this intent. But it is in this cause unnecessary to decide this question ; the first count in this indictment being considered sufficient, and the undoubted rule on indictments being, that if one count be good though all the others be defective, it will be sufficient to support a general verdict of guilty. The People v. Curling, 1 John. Rep. 320. Kane v. The People, 3 Wend. R. 363. R. v. Ingram et ux. Salkeld, 384. Rex v. Coles et al, 2 Ld. Raymond, 886. Cowp. 276. 1 Chit. Cr. L. 249, 640. I have been unable to find any case or even dictum, in which this well settled principle has been denied or even doubted. The late case of O’Connell in the house *409 of Lords in England, referred to by the counsel of the plaintiff in error, from newspaper report, if decided in opposition to this principle, partook too strongly of political character and feelings to entitle it to much consideration in the courts of this country.
The remaining reason urged by the counsel for the reversal was, that the record was signed by J. C. H. who was not a member of the court which tried the cause. That the record must be signed by a member of the commission, and w'ho must appear by the record itself to have been so. This objection does not seem to be taken to the signature of the judge to the return to the writ of error, which is not signed by the same Justice of the Supreme Court, who presided in the oyer when this indictment was tried, but by another. In such case it may be doubtful whether the signature of the Judge be necessary at all. In case of a Certiorari to the sessions, it is said that the Justices need not sign their names, provided it appear to be their return for respondo Justiciorum Dominae Reginae is said to be sufficient. Com. Dig. Cert. C.; 6 Mod. 43. State v. Gibbons, 1 South, 44, 46.
So in error to the Pleas from the King’s Bench, the Chief Justice usually signs the return ; but it is said that it is not essentially necessary. 1 Archb. Pr. 270.
But the objection is, that the record itself, made up and returned with the writ of error in this case, is not verified by the signature of the same Justice of the Supreme Court, who appears by the record to have presided in the oyer and tried the indictment. It is said by the counsel, that in this State the commissions of Oyer and Terminer and General Gaol Delivery only differ from the commissions heretofore issued, in form and not in effect. That here special commissions are not necessary, there being now a general commission by statute. Elm. Dig. 370. § 1. But that the proceedings and record must be the same as before, and that the record must still show who holds and executes the commission. State v. Zule, 5 Halst. 348. That if there is no good commission the indictment is void. 4 Bl. Com. 390. And the counsel have drawn the conclusion, that the record must be signed by the same Justice of the Supreme Court whose name appears in the record, or it is a fatal mistake. *410 No record in New Jersey, so far as ascertained, was ever made up in criminal cases, even when capital, except for the purpose of bringing a writ of error, or some other special purpose, until the case of Clough in Burlington. In that case a formal record was made up under the direction of Chief Justice Hornblower and signed by him, and since then records have been made up and signed in other capital cases. But under the usual practice in this state, no record being ordinarily made up and signed, if the inference contended for be correct, very serious results might ensue from the death of the Justice who tried the indictment, to any one, whose protection or justification should depend upon the production of the record of conviction or acquittal.
But whence the necessity that the judgment roll in criminal eases should be signed at all by a Justice of the Supreme Court, or other judge of the Court in which an indictment has been tried ? I am not aware that such signature is necessary at common law. It is required in civil cases in this state, when finally determined, by the 76th section of the Practice Act, which prescribes the mode in which the record in such cases shall be made up ; but that statute does not extend to final judgments in criminal cases.
But, if the signature of a judge be necessary to the verification of the record, I apprehend that the signature of any justice of the Supreme Court will be sufficient. By the act of the 27th of November 1794, the Justices of the Supreme Court, and the Judges for the time being of the court of Common Pleas of any county, or any three or more of them, of whom one of the justices of the Supreme Court shall always be one, constitute the courts of Oyer and Terminer and General Jail Delivery of such county. And by the act of the 11th of March 1841, those courts in each county are to be deemed and taken to be one court, to be called “ The Court of Oyer and Terhiiner and General Jail Delivery.” It is no longer a commission; it is a court and a court of record, of which each Justice of the Supreme Court for the time being is a judge; and as I apprehend,'of consequence, the records of the court may be verified by the signature of any one of the said Justices, being a Justice at the time when the *411 judgment purports to be signed. I am of opinion that the judgment should be affirmed.

Judgment affirmed.

Randolph, J. did not hear the argument and expressed no opinion.
Cited in State v. Weller, Spence. 526; West v. State, 2 Zab. 237.