THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
FRANK MONIA AND THEODORE T. SEFCHIK, PLAIN-
TIFFS IN ERROR.

Submitted May 2, 1944—Decided August 30, 1944.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and
PERSKIE.

For the plaintiffs in error, *John O. McGuire* (*Hyman
Siegendorf,* of counsel).

For the state, *Walter D. Van Riper,* Attorney-General,
*John M. Ward,* Assistant Attorney-General.

The opinion of the court was delivered by

PERSKIE, J. This is a criminal case. Plaintiffs in error
(defendants below) were two of the four duly appointed and
qualified members of the Board of Registry and Elections

who acted and served as such, at the general election on November 2d, 1942, in and for the eleventh election district of the fourth ward of the City of Passaic. Both were convicted of the crime of non-feasance (the other two were acquitted), and each was sentenced to be confined in the county jail for a term of three months and to pay $500 and stand committed until the fine was paid. Both appeal. Their appeal is before us on strict writ of error (*R. S.* 2:195–1) and a purported entire record of the proceedings had upon the trial. *R. S.* 2:195–16.

The state concedes that the indictment upon which the four were tried, and upon which plaintiffs in error were convicted, was based upon *R. S.* 2:160–1 which provides that: "Any magistrate or other public officer who shall willfully refuse or neglect to perform, within the time required by law, any duty imposed upon him by law, shall be guilty of a misdemeanor."

Briefly stated, the indictment charges in one count, in substance, that plaintiffs in error "unlawfully, willfully, knowingly and fraudulently" neglected and omitted to perform their duties as election officers (compare *R. S.* 19:34–48) in the following particulars, viz., in failing and omitting to compare the signature made by the voter in the poll book with the signature theretofore made by the voter in the signature copy register for the election district in question (*R. S.* 19:15–15), in failing and omitting to exercise reasonable care to prevent voting by false impersonation, and in neglecting and omitting to reject ballots illegally marked, ballots bearing illegal erasures (*R. S.* 19:16–4), in failing to reject and declare void ballots on which the voter had voted in excess of the number of candidates to be elected to office at said election in said election district (*R. S.* 19:16–3), in failing carefully and accurately to add the vote given for each candidate for office to be filled at said election and truly note the same upon the tally sheet (*R. S.* 19:16–9), and in failing, before signing the statement, certificate and return of the result of the election in question, personally to examine each of the tally sheets to determine the correctness of the results (*R. S.* 19:17–2).

On the day of and immediately prior to trial, counsel for all defendants, with leave of the court, withdrew their plea of not guilty and moved to quash the indictment on grounds hereinafter stated. The trial judge reserved decision on the motion, reinstated the pleas, and the trial followed. At the end of the state's case and also at the end of the entire case, counsel moved for a directed verdict of acquittal including in each motion the grounds upon which he had moved to quash the indictment. The trial judge denied all motions.

Eight reasons for reversal are set down and argued for plaintiffs in error. The first four reasons relate to the attack made upon the refusal to quash the indictment because of its asserted illegality. The grounds upon which that attack is made here, as below, are (1) that the indictment is duplicitous in that it charges several distinct offenses in a single count; *State* v. *Clement,* 80 *N. J. L.* 669; 77 *Atl. Rep.* 1067; *State* v. *Bolitho,* 103 *N. J. L.* 246, 263; 136 *Atl. Rep.* 164; *affirmed,* 104 *N. J. L.* 446; 146 *Atl. Rep.* 927; (2) that it is "uncertain and ambiguous" in that it makes no specific reference to any "particular act done or perpetrated by any one individual defendant;" (3 and 4) that it fails to charge a crime although it is argued that the indictment embraces acts of misfeasance and non-feasance. Thus here too the complaint in fact is not that the indictment does not charge a crime but rather that it charges too many in one count.

The state on the other hand defends the denial to quash (for applicable rules of law, see *State* v. *Harris,* 132 *N. J. L.* 54) and the legality of the indictment on the grounds, in substance, that the indictment clearly, definitely and precisely charges the one crime of non-feasance for criminal neglect of official duties imposed on all defendants, *R. S.* 2:160–1, and that while the divers acts of neglect charged "constitute distinct offenses against the law," they are nonetheless "cognate" to the one charge of non-feasance (*Cf. State* v. *Bolitho,* 103 *N. J. L.* 261), and that the divers acts charged are more in the nature of a "bill of particulars" of the various acts of official misconduct specifically charged. *State* v. *Bolitho,*

*Id.* (at *p.* 263). *Cf. State* v. *Castle,* 75 *Id.* 187; 66 *Atl. Rep.* 1059.

But be all this as it may, the determination of the respective contentions is not properly before us.

1. The indictment was not removed to this court before trial thereon, on *certiorari,* to test its validity. *Cf. State* v. *Clement, supra; State* v. *Alfin,* 129 *N. J. L.* 196; 28 *Atl. Rep.* (2d) 649. No motion in arrest of judgment was made. Nor is its validity properly before us either under *R. S.* 2:195–1 or *R. S.* 2:195–16 even though plaintiffs in error included their objections thereto on their motions "to direct verdicts" of acquittal in their favor. *Cf. State* v. *Bolitho, supra* (at *p.* 260).

(a) The indictment is not properly before us under *R. S.* 2:195–1 because of the lack of a bill of exceptions as provided by *R. S.* 2:195–14, as amended by *Pamph. L.* 1943, *ch.* 43, *p.* 83, § 1, approved March 27th, 1943. Prior to the amendment, the trial judge was obliged to settle a bill of exceptions taken and sign and seal same. Assignments of error which failed so to comply with the statute were not considered. *Cf. State* v. *Rogers,* 122 *N. J. L.* 490, 493; 6 *Atl. Rep.* (2d) 207; *affirmed,* 126 *N. J. L.* 428; 19 *Atl. Rep.* (2d) 886. By the amendment, the trial judge continues to be obliged to settle a bill of exceptions but is not required to sign and seal each exception. Since the right of a defendant to a bill of exceptions is statutory, that right must be and is strictly construed. *State* v. *Dwyer,* 130 *N. J. L.* 179, 181, 182; 32 *Atl. Rep.* (2d) 172. The assignments of error do not satisfy the statutory requirement; they cannot be and are not considered.

(b) Nor is the validity of the indictment properly before us under *R. S.* 2:195–16. The record fails to disclose the following exhibits offered and submitted in evidence:

*Exhibit S-1,* certificate of service of defendants as election officers.

*Exhibits S-2,* and *S-28,* poll books at election.

*Exhibit S-3,* sixteen original permanent registration sheets, containing genuine signature of questioned voters.

*Exhibits S-4* and *S-5,* official statements of election.

*Exhibit S-6,* tally sheet for district.

*Exhibit S-7,* oaths of office of defendants.

*Exhibit S-8,* tally sheets.

*Exhibit S-9,* ballots at election.

*Exhibit S-10,* paper in handwriting of defendant Sefchik.

*Exhibit S-11,* paper in handwriting of defendant Monia.

These exhibits were before the jury. They were unquestionably relevant and material to the state's case. One of the charges was that the poll books showed signatures of alleged voters as having voted while such voters swore that they did not vote. Passaic had permanent registration. The statute required that the voter sign his name without assistance in the poll book, that his signature be compared with his signature in the signature copy record, and if the two signatures were the same or sufficiently similar, the voter was eligible to receive a ballot. *R. S.* 19:15–15.

Neither such original exhibits nor photostatic copies thereof are made to appear in the record. Why not? No answer is given. It is not for us to speculate. It should suffice to observe that it is the burden, the duty of plaintiffs in error to bring up the entire record when, as here, they invoke the benefits of the statute. *State* v. *Dwyer, supra.* This they did not do. They are therefore bound by the record which they voluntarily submitted. *Cf. State* v. *Locke,* 119 *N. J. L.* 30; 194 *Atl. Rep.* 387; *affirmed,* 122 *N. J. L.* 431; 5 *Atl. Rep.* (2d) 729; *State* v. *Lisena,* 131 *N. J. L.* 48, 51; 34 *Atl. Rep.* (2d) 737.

2. Four reasons remain. Two of them (5-6) relate to alleged error in the admission of evidence, one (7) relates to refusal to direct a verdict of acquittal, and the last (8) relates to claim that the verdict was against the weight of the evidence. None has merit.

(a) The trial judge did not err in admitting in evidence the original ballots and tally sheets. They were relevant and material to the state's case. Their genuineness was clearly proved. They were at all times, prior to their admission, in proper custody. No evidence was adduced tending to raise

a real question, much less to establish the fact, but what these records were not in the same condition when offered in evidence as when they left the custody of the plaintiffs in error.

(b) And the objection that four witnesses were called as experts, without having been qualified as such, is equally nebulous. They did not claim to be experts. They did not so testify. They simply testified to facts within their knowledge, namely, the result of the recount which they had made of the ballots and tally sheets in evidence. There is nothing to indicate that in so doing they encroached upon the exclusive province of the jury to determine the subject-matter. Plaintiffs in error suffered no manifest wrong or injury by the testimony of these witnesses.

3. Nor did the trial judge err in denying the motions for a directed acquittal. The state had established a case which required the submission thereof to the jury. Nor can we say that the verdict is against the weight of the evidence. For to set aside a verdict as against the weight of the evidence that fact must be so clear as to give rise to the inference that the verdict was the result of mistake, passion, prejudice, or partiality. *State* v. *Treficanto,* 106 *N. J. L.* 344, 350; 146 *Atl. Rep.* 313; *State* v. *Lederman,* 112 *N. J. L.* 366, 370; 170 *Atl. Rep.* 652; *State* v. *Cox,* 128 *N. J. L.* 108, 111, 112; 23 *Atl. Rep.* (2d) 555. Much emphasis is placed upon the fact that, upon the same evidence, plaintiffs in error were found guilty while the other two members of the board were found not guilty. Whether that result was because one of the two acquitted was a female who served as an election officer for the first time, and the other who was acquitted had served as an election officer for the second time, while plaintiffs in error had considerable experience in the service as election officers, is not for us to say. The test under *R. S.* 2:195–19 (assignments of error that the verdict is against the weight of the evidence) is not whether our minds, as reviewing judges, are also satisfied beyond a reasonable doubt of the guilt of the accused. The test is whether the jury whose exclusive function it is to determine whether the guilt of the accused has been established beyond a reasonable doubt committed an "injustice" as the result of a "plain and obvious failure" to

function within its allotted sphere. *State* v. *Woodworth,* 121 *N. J. L.* 78, 90, 91; 1 *Atl. Rep.* (2d) 254; *State* v. *Linarducci,* 122 *N. J. L.* 137, 144; 3 *Atl. Rep.* (2d) 796; *affirmed,* 123 *N. J. L.* 228; 8 *Atl. Rep.* (2d) 576; *State* v. *Cox, supra.* No such injustice is made to appear.

The judgment is affirmed, with costs.