100 N.J. Super. 51 (1968)
241 A.2d 41
CITY OF ELIZABETH, PLAINTIFF-APPELLEE,
v.
REV. ELMER L. SULLIVAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division  Criminal.
Decided March 12, 1968.
*52 Mr. John R. Weigel, Special Counsel for the City of Elizabeth, for plaintiff-appellee.
Mr. Howard Popper for defendant-appellant.
TRIARSI, J.D.C. (temporarily assigned).
The defendant herein appeals from a conviction in the Elizabeth Municipal Court wherein he was charged with distributing a leaflet without first having obtained a permit in contravention of a city ordinance.
From the stipulated evidence it is factually determined that on the morning of December 22, 1967 the defendant, Rev. Elmer L. Sullivan, Rector of St. Augustine's Episcopal Church in Elizabeth, appeared in Scott Park, situate a short *53 "stone's throw" from Thomas Jefferson High School, and distributed to a high school student a controversial social and political yellow leaflet entitled "ARE YOU ONE OF THE THOUSANDS OF YOUNG PEOPLE IN THE UNITED STATES DEEPLY CONCERNED OVER THE ROLE OF THE UNITED STATES GOVERNMENT AND ITS ARMED FORCES IN VIETNAM?" It advises our youth that if they believe that the Vietnam war is "right" they need not wait to be drafted, they could volunteer; but, if they are of the opinion that the war is "wrong" there are avenues of learning available wherein they could be enlightened as to whether or not they are entitled to a Conscientious Objector classification resulting from their beliefs by the Selective Service Boards. Succinctly and unquestionably, the leaflet involves one of the most controversial and burning issues of our time; the public interest therein is at a maximum or apogee. The act of distribution was performed in the presence of the License Inspector and a policeman of the City of Elizabeth who, as a result of prior notice, attended to effect the service of a summons and the arrest of Rev. Sullivan. It must be noted that the inspector and police did not read the leaflet before the service of summons and arrest was completed and that they acted without any knowledge of the contents of the leaflet.
It must also be noted that the Rev. Sullivan failed to file an application for a permit and had not been issued a permit for distribution of the leaflet as required by the ordinance on or before December 22, 1967. He was subsequently convicted and fined $10. for the offense.
The Court on this appeal is presented with one pivotal issue, to wit: Whether the pertinent Elizabeth City Ordinance is violative of defendant's constitutional rights of freedom of speech and freedom of press.
The City Ordinance under discussion, Ordinance No. 18 as amended by Ordinance No. 70, November 28, 1962, provides in pertinent part:
*54 "SECTION 1. No person, except as in this ordinance provided, shall canvass, solicit, distribute circulars or other matter or call from house to house, in the City of Elizabeth without first having reported to and received a written permit from the License Inspector, Central Licensing Bureau, Division of Revenue, Department of Finance.

* * * * * * * *
SECTION 3. This ordinance shall not apply to anyone who solicits any votes or support for a bona fide political candidate running for public office.
SECTION 4. The License Inspector shall have power to grant permits to canvass, which permits shall specify the number of hours or days the permit will be in effect, and such inspector shall refuse to issue a permit in all cases where the application of the canvasser or further investigation to be made at the discretion of such inspector, shows that the canvasser is not of good character or that he is canvassing for a project not free from fraud * * *.
SECTION 5. Before the permit may be issued the canvasser shall make an application to canvass, giving his or her full name and address, age, height, weight, place of birth, whether married or single, length and place of residence, whether or not previously arrested or convicted of crime, by whom employed, address of employer, and a description of the project for which he or she is canvassing. Each applicant shall be fingerprinted before a permit shall be issued.

* * * * * * * *
SECTION 7. Rules and Regulations:
A. No person shall canvass within the City except between 9 A.M. and 8 P.M.
B. A copy of the permittee's photograph (2 inch x 2 inch) shall be carried on his permit * * *. The permittee shall exhibit his or her permit to the License Inspector, to any police officer, or other person including those being solicited, upon request. * * *
SECTION 8. This ordinance shall not affect any person engaged in the delivery of goods, wares or merchandise or other article or thing in the regular course of business to the premises of persons ordering or entitled to receive same.
This ordinance shall not affect any person engaged exclusively in any religious, charitable or philanthropic endeavor.
This ordinance shall not affect any person who is covered by the ordinance entitled, `An ordinance to regulate and license vendors, peddlers, itinerant or transient merchants.'"
Violation of the aforesaid ordinance is punishable by fine or imprisonment. Defendant herein was not imprisoned but fined $10. for contravening the ordinance.
A construction and analysis of the ordinance, sub judice, requires preliminarily a discussion of the statutory *55 authority of the City of Elizabeth with respect to the passage of ordinances and like regulations. This authority has been legally characterized as a municipality's police power and is embodied in N.J.S.A. 40:48-2. Said statute, setting forth the power of a municipality, a "creature" of the State, provides in pertinent part:
"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law." (Emphasis added)
See also N.J.S.A. 40:52-1 (Power to License and Regulate).
The function and extent of the municipality's police power has been discussed voluminously in the New Jersey decisional law. It is generally stated that a municipality has wide discretion as to the means it may employ to suppress an evil. Mister Softee v. Mayor & Council of City of Hoboken, 77 N.J. Super. 354 (Law Div. 1962). Municipal enactments are presumed valid and should be sustained when they bear a reasonable relationship to the end to be accomplished, namely, the safeguarding of the public health, safety and morals, and when the method adopted to meet the problem is reasonably designed to accomplish that end. Local Bd. of Health of Berkeley Twp. v. Johnson, 73 N.J. Super. 384 (App. Div. 1962); Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405 (1952); Moyant v. Borough of Paramus, 30 N.J. 528 (1959).
The presumption of validity discussed supra may, however, be overcome or rebutted not only by clear evidence aliunde, but also by a showing that the ordinance transgresses constitutional limitations. Mister Softee v. Mayor & *56 Council of City of Hoboken, supra; Moyant v. Borough of Paramus, supra.
Defendant in the matter sub judice contends that the ordinance under review is violative of and infringes upon his constitutional rights of free speech and press. N.J.S.A. Const. Art. 1, par. 6; U.S.C.A. Const. amend. 1. In determining the viability of defendant's contentions, the Court must, at the outset, recognize the legal dichotomy between the regulation of commercial and non-commercial activity. It is widely recognized that the "business" of soliciting and canvassing is a proper subject for regulation under the police power if such regulation is reasonable. The justification for this kind of police power regulation is aptly stated by the Court in Moyant v. Borough of Paramus, supra:
"The way in which the business [of canvassing and soliciting] is necessarily conducted opens the way for fraud, deceit, and dishonest dealing by the unscrupulous * * * with redress difficult or practically impossible since the solicitor is very frequently a stranger * * *. Resort may also be easily had to the business by the criminally minded for the purpose of obtaining admittance to private homes in furtherance of some present or future unlawful object." (at p. 544)
See also Schneider v. State of New Jersey (Town of Irvington), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Dziatkiewicz v. Township of Maplewood, 115 N.J.L. 37 (Sup. Ct. 1935); 7 McQuillan, "Municipal Corporations" (3rd ed. 1949).
With respect to commercial soliciting and canvassing, therefore, an ordinance of the type under discussion will not be struck down in view of the reasons dictating regulation. Moyant v. Borough of Paramus, supra.
However, municipal regulation of the distribution of non-commercial leaflets involves grave constitutional questions of freedom of speech and press. Two decisions by the United States Supreme Court require extended discussion and quotation in order to define the limits of the police power with respect to the non-commercial distribution of leaflets or circulars.[*] *57 In Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), the Court was presented with a conviction under a city ordinance requiring a permit for the distribution of circulars. Appellant therein was distributing a pamphlet in the nature of a religious tract. The Court, in arriving at its decision invalidating the ordinance observed:
"Freedom of speech and freedom of the press, which are protected by the first amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action. * * * It is also well settled that municipal ordinances adopted under state authority constitute state action and are within the prohibition of the amendment.

* * * * * * *
The liberty of the press * * * necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty * * *. What we have had recent occasion to say with respect to the vital importance of protecting this essential liberty from every sort of infringement need not be repeated. * * * Liberty of circulating is as essential to that freedom as liberty of publishing." (at pp. 450, 452, 58 S.Ct., at p. 668)
Schneider v. State of New Jersey (Town of Irvington), supra, also involved the constitutionality of an ordinance markedly similar to the one under analysis. Therein petitioner was arrested and charged with canvassing without a permit. Said petitioner was going from house to house at all hours distributing information on the Jehovah's Witnesses and accepting small contributions. The Court found that the Irvington ordinance infringed upon the petitioner's *58 constitutional rights of freedom of speech and press. The Court stated:
"Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion. Municipal authorities * * * have a duty to keep their communities' streets open and available for movement of people and property. * * * [S]o long as legislation to this end does not abridge the Constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, * * * a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech deprive a municipality of power to enact regulations against throwing literature broadcast in the street." (308 U.S., at p. 160, 60 S.Ct., at p. 150)
The Schneider case, however, makes it quite clear that public convenience in respect of cleanliness of the street does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution. See also Coughlin v. Sullivan, 100 N.J.L. 42 (Sup. Ct. 1924).
Schneider v. State of New Jersey (Town of Irvington), supra, is controlling in a determination of the validity of the Elizabeth ordinance. The fact that Section 8 of the Elizabeth ordinance excepts persons engaged in religious, philanthropic and charitable endeavors, thereby differing in small degree from the Irvington ordinance, is immaterial. For, as the Court stated in Schneider:
"* * * [T]he Irvington ordinance * * * affects all those, who, like the petitioner, desire to impart information and opinion to citizens at their homes. If it covers the petitioner's activities it equally applies to one who wishes to present his views on political, social, or economic questions." (308 U.S., at p. 163, 60 S.Ct., at p. 152).
This Court is of the opinion that the Elizabeth City Ordinance [No. 18 as amended by No. 70, November *59 28, 1962] requiring a permit for distributing circulars under any circumstances is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the guarantees of freedom of speech and freedom of press. The ordinance as applied to defendant's conduct is void. To require a permit is not only oppressive but also dangerous and suppressive, for it makes impossible the free and unhampered distribution of pamphlets concerning important political and social problems. It would subvert the intent and spirit of the Constitutions of the United States and the State of New Jersey. Regulation of this sort, no matter how worthy its intendment, is a curtailment of the fundamental rights of our citizenry.
It is therefore, the opinion of this Court that defendant's conviction must be reversed.
NOTES
[*] See also Niemotko v. State of Maryland, 340 U.S. 268, 71 S.Ct. 325, 328, 95 L.Ed. 267, 280 (1950); Kunz v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1950); Saia v. People of State of New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Jamison v. State of Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Talley v. State of California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); Cf. Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).